## McCOY v. SOUTHERN PAC. CO.*

### No. 14,091; May 20, 1891.

#### 26 Pac. 629.

**Railroads—Stock-killing.—The Fact That a Herder,** after having rounded up his sheep a mile and a quarter from a railroad track, and after some of them have lain down as if for the night, takes his dog and goes home, is not such contributory negligence as will relieve the railroad company from liability if the sheep afterward stray on the track and are negligently killed; and the admission of incompetent evidence as to the custom of rounding up and herding sheep is not prejudicial to the company.

**Railroads—Stock-killing—Fence.—In an Action Against a Railroad Company** for negligently killing stock, an allegation that the damage was caused by defendant's failure to maintain a good and sufficient fence will include any defect in the fence without more particular reference to it.

**Railroads—Stock-killing—Fence.—One Who has Only a Right** to pasture his stock on another's land, adjacent to a railroad, is entitled to the protection of the statute requiring railroad companies to maintain a fence.

APPEAL from Superior Court, Tehama County; Charles P. Braynard, Judge.

*For subsequent opinion in bank, see 94 Cal. 568, 29 Pac. 1110.

Chipman & Garter for appellant; John F. Ellison and A. M. McCoy for respondent.

TEMPLE, C.—This action is for damages for killing plaintiff's sheep by the defendant's locomotive and cars. Plaintiff was the owner of a band of about three thousand sheep, which he avers were lawfully grazing in a field adjoining defendant's railway, near Rawson's switch, in Tehama county; that, by reason of the failure of the defendant to make and maintain a good and sufficient fence, they, without his fault, strayed upon the track of the railway, and were run over and killed; also that defendant so negligently and carelessly ran and managed its engine and cars that they ran over and killed plaintiff's sheep. The defense is a general denial and a charge of contributory negligence. It appears that Boyd Bros. were in possession of what was known as the "Healey Ranch," as tenants of one Kraft. In the fall of 1889, they sold to plaintiff the stubble feed on the ranch after the grain was removed, and let him into such possession as was necessary to enable him to pasture the fields. Plaintiff was to take charge of his sheep while there, Boyd Bros. assuming no responsibility with reference to them. Boyd Bros. continued to live upon the place, and contracted with plaintiff to board his herder. Plaintiff had possession of no buildings, was not to reside upon the place, but kept his herder there to look after the sheep. Under this contract he drove his sheep on the place on or about the sixteenth day of September, and they were left there in charge of a herder. On the night of the 7th of October the herder "camped the sheep" about one mile and a quarter from the railroad. After "rounding them up" at this place, he remained until some of them had laid down, apparently for the night, and then went home. The night was rainy, and the sheep strayed from this place to an opening in the fence at Rawson's switch, and out upon the track, and were run over, and some of them killed, by a train running toward Red Bluff, at about half-past 7 in the evening. The same train returned in the morning, and again ran over and killed some more of them at about the same place. Rawson's switch, where the sheep entered, was a flag station, and the land inclosed by the defendant at that point is wider than at other places. On the

side next this field the fence is some two hundred and seventy feet farther from the track. This extra width is sixty panels measured by the fence, or about one thousand feet in length along the railway. Near the center of this the Rawson and Healey ranches join, and the opening is near the division fence. The defendant had quite recently constructed a new fence along the right of way and this extra width or reserve, which was evidently intended for use in connection with the station. The opening had been made by Boyd Bros. with the consent of the section boss or master. His duty in reference to such matters appears from the evidence of Davis, the division foreman, to be, if he finds any slight repairs required in the fence which he has the means to make, then to make such repairs, but defects which he has not the lumber or other means to repair it is his duty to report to the division foreman. Boyd Bros. desired this opening for their private accommodation. There was already a gate through which they could have had access to the station, but it was less convenient. They took down a panel sixteen feet long, in March preceding the accident, and it had never been replaced, or the fence made good by a gate or any other device. The section-master, when he gave consent to make the opening, promised to have a gate placed there, but it had never been done. The old fence, which had shortly before been replaced by the new one, had an opening at the same place, in which there had never been a gate. In short, there had always been an open road there leading from Boyd's house to the station. The field was a large one; how large is not shown. But it extended from the Sacramento river on the south to the railway on the north, and it is stated that the house was about one mile from the railway, and a mile and a half from the river; also that all the bottom land was in grain, and four hundred acres of the upland. The plaintiff and his herder both testify that they had not seen this opening before the accident, and did not know of its existence. The plaintiff had seen two gates opening into the right of way, and had given special directions for extra care in keeping them closed. The sheep had been upon the place about twenty days before the accident, and during that time Boyd Bros. had done some hauling through this opening, as they had done before.

A motion for a nonsuit was made at the conclusion of plaintiff's evidence, on the ground of insufficiency, specifying the particular defect claimed; but as the motion was denied, and further evidence put in by both parties, it is not now necessary to consider whether this motion was properly denied; for all the points which can now be urged against this ruling arise also upon the objections to the sufficiency of the evidence to justify the verdict. At the trial very numerous exceptions were taken to the rulings, admitting, or refusing to admit or strike out, evidence. We have carefully examined the record as to these objections, and, as to most, it is sufficient to say there is nothing in them, or the evidence in question was so entirely immaterial that no harm could result either way. A few only we deem it necessary to specially notice. A large number of such exceptions have reference to opinion evidence, as to the proper herding of sheep and the custom of other herders in such cases. The matter in contention seems to have been whether the fact that plaintiff's herder ''rounded the sheep up,'' as the phrase is, a mile and a quarter from the track, and, after some had lain down, took his dog and went off for the remainder of the night, was contributory negligence. But we think, as matter of law or of general knowledge, this would not constitute such negligence as would relieve the defendant of liability. Evidence, therefore, upon this point could not have been prejudicial to the defendant.

One source of damage stated in the complaint is the failure to maintain a good and sufficient fence. In McCoy v. Railroad Co., 40 Cal. 532, 6 Am. Rep. 623, it is said: ''The neglect of the defendant to build the fence certainly did not operate to dispossess the plaintiff of his entire field, or, what is the same thing, prevent him from making lawful use of it. Besides, he probably knew that, so long as the defendant chose to continue running its cars upon this open track, it undertook at its peril that no harm should come to the stock for the want of a proper fence.'' It must follow that adjoining proprietors may use their land whether fenced or not, or whether the fence is sufficient or not, and are not bound ordinarily to take any precautions, even when they know the fence to be insufficient, but may use their land in the ordinary manner, relying upon the responsibility of the railroad corporation in case of loss.

26

Whatever complaint the owner of the sheep could have made on the subject of want of care on the part of his herder, as against dogs or coyotes, or panic from any source, the defendant was not interested in it. Had there been a good and sufficient fence, with no openings in it, there certainly would have been no negligence, in reference to the defendant, in leaving such a band of sheep overnight without a keeper, in a stubble field of the extent of this one. There was proof that neither plaintiff nor his herder knew of the open space in the fence. It appears that the fence along the right of way was in general a good one, and there is no allegation in the complaint in reference to the open space through which the sheep passed to get upon the track. Objection is made that, without such allegation, evidence of damage in such case is inadmissible. But it is evident, admitting that the defect in the fence is the fault of defendant, that the averment that defendant failed to maintain a good and sufficient fence would include such a defect, or any defect, which rendered the fence insufficient. The case of Jahant v. Railroad Co., 74 Cal. 9, 15 Pac. 362, does not sustain appellant. In that case there was no such allegation as to the insufficiency of the fence, but the damage was averred to result from the careless and negligent management of defendant's cars. The horses were on the track, therefore, presumably through the fault of the plaintiff. A remark was made, apparently not necessary for the decision of the case, that this presumption was not sufficiently negatived by the general averment that the animals escaped without his fault.

The court refused to give the second instruction asked by the defendant. It reads as follows: "I instruct you, gentlemen of the jury, that a person who pastures his sheep upon the land of another person, required by law to be fenced by a railroad corporation, upon an understanding or agreement with such owner or his tenant, by which it is agreed that such owner or tenant shall not, in any degree or manner, become responsible for the safekeeping of said sheep, but that said sheep shall be taken care of exclusively by their owner and his herders, and such owner or tenant of the land shall remain in possession of the land, taking care of the fences, making and using openings therein, cultivating and tilling the soil, reserving the use of all buildings and farm implements, and

in every way exercising acts of dominion and control over said premises, except merely permitting the owner of the sheep to keep his sheep upon the premises, for the sole purpose of eating the feed therefrom growing upon said lands, is not entitled to the protection of the statute requiring a railroad corporation to fence such lands." We think the court properly refused this instruction. Any person lawfully occupying the land is entitled to the protection of the statute. One who only has the right to pasture his stock temporarily upon the land, as admittedly the plaintiff in this case had, is as much entitled to its benefit as the owner of the land.

The third instruction was properly refused. The objections to it are numerous. It required the court to usurp the province of the jury, and draw conclusions from the evidence. It erroneously implies that there was a necessity of notice to defendant of the opening, although made with its knowledge and consent. It ignores the duty of the defendant to take constant care of its fences, which require it to know within reasonable time of defects, and to repair them. The evidence we think, plainly tended to show that there was a mixed possession of the ranch by plaintiff and Boyd Bros. The principal dominion and control was doubtless in the plaintiff. But at the same time Boyd Bros. were also living upon the place with such limited possession and rights as would not interfere with the plaintiff. The defendant at the trial took the ground that, under such circumstances, plaintiff had no rights under the statute at all. In this we think it was wrongly advised. No doubt, however, under such circumstances, the parties having a mixed possession, under a contract, each, under certain circumstances, is liable to suffer for the acts of the other. If, for instance, the opening was in the fence through the fault of Boyd Bros. during such co-occupation, and through no fault of defendant, the plaintiff ought not to have recovered. Had an instruction embodying this proposition, and free from objection, been offered, it should have been given. But, although counsel for the defendant made the proposition in various ways, it was always accompanied with something which justified the court in refusing it. Generally, as in the third instruction asked, it was stuffed with an argument which counsel was anxious to have the court make to the jury—a practice which has become altogether too common. An instruction

should be a simple proposition of law, in form, if possible, specially applicable to the facts of the case. But the argument as to its effect should, in general, be left to counsel.

The sixth rejected instruction comes nearest to this simple legal proposition. But there the relation between Boyd Bros. and plaintiff which the jury were required to find, in order to apply the rule, was simply that plaintiff entered into the use of the pasture under contract with Boyd Bros. The fact of co-occupation was ignored. In this case counsel differ widely as to the rights acquired by plaintiff under his contract. Defendant insists that Boyd Bros. were left with full dominion and control, and plaintiff had not even a qualified possession. The instruction lays down no rule which the jury could understand. They are told plaintiff cannot recover if Boyd Bros. could not have recovered under similar circumstances. If similar means the same, the conclusion is quite obvious, and needed no indorsement from the court. If not the same, but in some respects like, in what respects? The jury are not told under what circumstances Boyd Bros. could not have recovered. But why refer to such hypothesis? The question was not as to the liability of Boyd Bros., but whether, under the circumstances, plaintiff could recover. An instruction could easily have been framed to the effect that a joint occupation, by mutual consent, being found from the evidence, plaintiff could not recover if the opening was made by Boyd Bros., without the consent of defendant, and there was no negligence on its part. Outside of the questions already discussed, the charge that the evidence is insufficient to sustain the verdict must depend upon the question whether there was evidence tending to prove the authority of Daly, the section-master, to authorize the opening in the fence. We think there was sufficient evidence to justify such conclusion. In their business railroad companies require numerous agents, of whose authority the public knows nothing, save what appearances indicate. It is important both to the public and to the company that such appearances be implicitly relied upon. Unless they were so, the business of such companies would be greatly impeded. It was clearly the duty of the defendant to have some agent whose duty it would be to take care of the fences which it was bound to maintain. The facts show that the agent whose duty it was in this case to keep watch over the

fences was Daly. The court and jury were not bound to take his disclaimer of authority as conclusive. We think the weight of the evidence was with the conclusion of the jury upon the subject. We think the judgment and order should be affirmed.

We concur: Vanclief, C.; Foote, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFARLAND, J.—I dissent. The Boyd Bros. were clearly in possession and control of the land and the fences. If they opened the fence, they certainly could not have recovered if their sheep had gone through the opening and been killed. Plaintiff's sheep were being pastured on the land subject to the general control of the land by the Boyds; and, if the sheep were injured by any misconduct of the Boyds, the latter were, perhaps, responsible to plaintiffs for such injury. But if the Boyds kept the fence open for their own convenience, neither they, nor anyone temporarily occupying part of the land for a special purpose under them, can complain of the defendant. This proposition is practically admitted in the prevailing opinion of the court, but it is said that this proposition was not presented in the instructions asked by appellant. I think it was clearly presented, particularly in the sixth instruction asked. I think that the phrase, "if the Boyd Bros. could not themselves have recovered damages to their stock under similar circumstances," could not possibly have been understood by the jury in any other way than as meaning that if the sheep had belonged to the Boyd Bros., and had escaped onto the railroad under the circumstances under which plaintiff's sheep so escaped, and the Boyd Bros. could not recover, then plaintiff could not recover. I do not see how any intelligent jury could understand it in any other way. I think that the judgment should be reversed.

I dissent: Beatty, C. J.